UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WANDA MUNOZ, individually and as next friend
to minor child C.B.;                                                            17 CIV. 9583 (LAK) (DF)

                  Plaintiffs,                    **SECOND AMENDED COMPLAINT**

                                                        **JURY TRIAL DEMANDED**

               -against-

THE CITY OF NEW YORK, P.O. KATHY
HENRY, P.O. RAINARD WROTEN, LT. RYAN
PIERCE, P.O. ROAN LEWIS, P.O. JAMES FICO,
P.O. JONYA MCDOWELL, P.O ANTONIO
LOMEDICO, P.O. KENNETH WOISIN,
EMERGENCY MEDICAL TECHNICIAN
ERNESTO MEJIA, EMERGENCY MEDICAL
TECHNICIAN BRUNY ORTEGA-GARCIA,
JAMES P. O'NEILL, as Commissioner of the New
York City Police Department; DANIEL A. NIGRO,
as Commissioner of the New York City Fire
Department; sued herein in their official and
individual capacities.

                     Defendants.
-----------------------------------------------------------------X

## INTRODUCTORY STATEMENT

1.      On May 30, 2017, Wanda Munoz, a 17-year veteran Parole Officer with the New

York State Department of Corrections & Community Supervision (DOCCS), was called to pick

up her 16-year-old autistic son, C.B., at his afterschool program for special needs children in the

Bronx.  She was told by the program's staff that he was acting out in class and was not safe to

transport home on the program's bus.

2.      When she arrived at the program, Ms. Munoz saw a sight she would never forget:

her son was seated in a chair in handcuffs, surrounded by some 20 New York City Police

Department ("NYPD") officers.  The disturbing series of events that took place over the next several hours would turn her life upside-down.

3.      C.B., who was calm and handcuffed, was forcibly removed from the chair to an ambulance by NYPD officers.  Over Ms. Munoz's numerous objections, and despite the fact that there was no indication that C.B. would harm himself or others, C.B. was ordered to be transported to the hospital in clear violation of New York State's Mental Hygiene Law § 941.  C.B. had never been hospitalized before for any reason related to his behavior or his autism.

4.       As Ms. Munoz assisted her son into the ambulance, while simultaneously pleading with anyone who would listen, including the Emergency Medical Technicians ("EMTs") that were present, that she be allowed to take her son home, she was grabbed by Police Officer Kathy Henry, who placed Ms. Munoz under arrest.  While arresting Ms. Munoz, Officer Henry stated something to the effect of: "Enough of you talking to EMS."

5.      After being detained for nearly eight hours at the 49th Precinct in the Bronx, Ms. Munoz was released and received a Desk Appearance Ticket.  She was charged with a lone misdemeanor count of Obstructing Governmental Administration.  Her criminal case was dismissed at the request of the Bronx County District Attorney's office on August 14, 2017, just thirteen days after her arraignment.

6.      This episode is yet another example of the NYPD and FDNY's failure to properly address an individual suffering from a "mental crisis."[1]

7.      In January 2017, the New York City Department of Investigation ("DOI") issued a scathing report on the NYPD's failure to train its officers to de-escalate and manage

---

[1] C.B. has been diagnosed with autism spectrum disorder, which is considered an intellectual disability rather than a mental health condition.  However, given the facts of this case, the NYPD treated the situation as if he were suffering from a "mental crisis."

interactions with individuals in a mental crisis.  Although the NYPD created and implemented a "Crisis Intervention Team" ("CIT") training in the summer of 2015, the DOI found that by early 2017, the NYPD had "not begun to effectively deploy CIT-trained officers to situations where they are needed," did not "adopt new Patrol Guide provisions and other procedures aligned with CIT principles" and noted a number of deficiencies in the content of NYPD's CIT training.  *See* http://www1.nyc.gov/assets/oignypd/downloads/pdf/Reports/CIT_Report_01192017.pdf, p. 2-3.

8.      Aside from violating New York State's Mental Hygiene Law in arresting C.B. while he was calm and not a danger to himself or others, the FDNY via the two EMTs named in this case failed to follow its own procedures, which only permit the transport of a minor over a parent's objection if the child's "medical problem or injury is life threatening...and it is apparent that a delay, even if minimal, will jeopardize the life of the minor, or significantly jeopardize the health of the minor patient."  *See* EMSC OGP 106-105 § 5.2.

9.      This stunning and traumatic episode scarred both Ms. Munoz and her son in more ways than one.  Aside from the embarrassment, humiliation, and fear she felt at being falsely arrested and imprisoned, Ms. Munoz was placed on modified duty at her job and was stripped of her service weapon.  C.B. continues to experience trauma as a result of the incident, including fear of police and ambulances, as well as the confusing and humiliating emotions that a child experiences when being handcuffed and hauled away in front of his friends, teachers and family.

10.     The Plaintiff, Wanda Munoz ("Plaintiff" or "Ms. Munoz"), now brings this action on her own behalf and on behalf of her minor child son, under 42 U.S.C. § 1983, for violations of both Plaintiff and C.B.'s constitutional rights, as well as under their rights under the New York State Constitution, seeking declaratory relief, compensatory and punitive damages, and attorney's fees under 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331 and 1343(3).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in the Southern District for New York, pursuant to 28 U.S.C. § 1391(b), because the incidents complained of occurred within this district.

## PARTIES

13.     The Plaintiff, Wanda Munoz, is a 48-year-old United States citizen who resides in Bronx, New York.  She has been employed by the New York State DOCCS for the past 17 years as a Parole Officer.  C.B. is her 16-year-old son.

14.     Defendant, City of New York ("NYC" or "The City"), is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, the City, acting through the NYPD and the FDNY was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD and FDNY matters and was responsible for the appointment, training, supervision, and conduct of all NYPD and FDNY personnel, including the Defendants referenced herein.  In addition, at all relevant times, The City was responsible for enforcing the rules of the NYPD and the FDNY, and for ensuring that the NYPD and FDNY personnel obey the laws of the United States and of the State of New York.

15.     On May 30, 2017, Defendant Kathy Henry, Shield #3088, was a duly sworn police officer of said department and was acting under the supervision of said department and according to her official duties, and under color of law.

16.     On May 30, 2017, Defendant Rainard Wroten was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

17.     On May 30, 2017, Defendant Lt. Ryan Pierce was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

18.     On May 30, 2017, Defendant Roan Lewis was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

19.     On May 30, 2017, Defendant James Fico was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

20.     On May 30, 2017, Defendant Jonya McDowell was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

21.     On May 30, 2017, Defendant Lomedico was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

22.     On May 30, 2017, Defendant Kenneth Woisin was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties, and under color of law.

23.     On May 30, 2017, Defendants Unidentified Police Officers John Does #1 through #20 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties, and under color of law.

24.     On May 30, 2017, Defendants Emergency Medical Technician ("EMT") Ernesto Mejio and Bruny Ortega-Garcia were EMTs acting under the supervision of the New York City Fire Department ("FDNY") and according to their official duties, and under color of law.

25.     On May 30, 2017, Defendant James P. O'Neill was and continues to be NYPD commissioner. As NYPD Commissioner, he is responsible for the development, implementation, and enforcement of all NYPD practices and policies, and, as such, was at all times material herein a policy-maker with respect to the treatment of individuals in New York City. He was likewise responsible for the training and supervision of NYPD personnel.  Defendant O'Neill is sued individually and in his official capacity.

26.     On May 30, 2017, Defendant Daniel I. Nigro was and continues to be FDNY commissioner. As FDNY Commissioner, he is responsible for the development, implementation, and enforcement of all FDNY practices and policies, and, as such, was at all times material herein a policy-maker with respect to the treatment of individuals in New York City. He was likewise responsible for the training and supervision of FDNY personnel, which includes EMTs. Defendant Nigro is sued individually and in his official capacity.

27.     All Defendants, either personally or by and through their employees, were at all times material to this incident, acting under color of state law, to wit, under color of the statutes, ordinances, customs, policies and/or practices of the State of New York and/or the City of New York, and the employees of Defendant City of New York were also acting within the scope of and in furtherance of their employment.

6

28.     At all times material to this complaint, the Defendants acted jointly and in concert with each other.  Each Defendant had the opportunity and the duty to protect the Plaintiff from the unlawful actions of the other Defendants but each Defendant failed and refused to perform such duty, thereby proximately causing the injuries to the Plaintiff and C.B.

## FACTUAL ALLEGATIONS

29.     On May 30, 2017, Ms. Munoz received a call that her son, C.B., was acting out at Lifespire, his afterschool program for disabled children located at 1315 Loomis St. in The Bronx, New York.

30.     C.B., who at the time was 16 years old, has been diagnosed with Pervasive Development Disorder on the Autism Spectrum, an intellectual disability.

31.     Prior to May 30, 2017, C.B. had never been hospitalized for any issue related to his autism, or for any kind of mental crisis.

32.     Normally, C.B. would take the bus home from the program.  But Ms. Munoz was informed by a staff member at the program that it was not safe to transport C.B. on the bus, and that she should come pick him up at the program.

33.     When Ms. Munoz arrived at the program, she observed at least 20 police officers to be present.

34.     Ms. Munoz saw her son in handcuffs, seated in a chair, looking fearful but calm. Numerous police officers towered over him and he sat motionless.

35.     Ms. Munoz asked if she could speak with the officer in charge.  At that point, Defendant P.O. Henry approached her.  Ms. Munoz asked P.O. Henry if her son could be released from handcuffs so Ms. Munoz could take him home.  Ms. Henry replied, "That is not my decision, that is up to EMS."

36.     Ms. Munoz then walked over to the individual believed to be EMT Ortega-Garcia. Ms. Munoz stated to EMT Ortega-Garcia: "I refuse medical treatment for my son.  He is not in distress.  He is not a danger to himself or others. He doesn't meet the emergency room criteria for requiring treatment.  I refuse medical treatment."

37.     EMT Ortega-Garcia then approached Ms. Munoz and attempted to persuade her to consent to C.B. being taken to the hospital.  She asked him a number of questions about what would happen to her son at the hospital, and what kind of evaluation the EMTs had already performed.  Neither EMT provided an answer.

38.     As a veteran New York State Parole Officer with 17 years of experience, Ms. Munoz is familiar with protocols that first responders and law enforcement must follow.  She also is well versed and trained in how to de-escalate situations involving individuals in a mental crisis—she works on a regular basis with parolees who suffer from all kinds of mental health disorders.

39.      While Ms. Munoz was talking with the EMTs, P.O. Henry approached her and stated, "Your son is going to the hospital.  I do not care what you say.  He needs to be evaluated."  P.O. Henry previously told Ms. Munoz that it was up to the EMTs, not the NYPD, to decide whether C.B. would be required to go to the hospital for an evaluation.

40.     While Ms. Munoz was in close proximity to the EMTs, she observed several police officers forcibly pick up her son from the chair and drag him out of the building and towards the ambulance.

41.     The officers had no basis to seize C.B. and take him to the ambulance.  He was calm, he was not doing anything that could be construed as a threat to himself or others, there

was no lawful reason for his continued detention and his mother refused to consent to him being taken to the hospital.

42.     After C.B. was taken outside, Ms. Munoz observed EMT Ortega-Garcia attempting to assist her handcuffed son into the ambulance.  But her son was having trouble keeping his balance while navigating the high step onto the ambulance, and because he was handcuffed, could not use his arms to balance himself.  Ms. Munoz was concerned that he would fall on his back or, worse, directly onto the back of his head.

43.      At that point, Ms. Munoz approached C.B, who appeared to be terrified.  No officer told her to stop or attempted to restrain her from approaching and assisting her son into the ambulance.  She looped her left arm through his right arm to help him climb the steps into the ambulance.

44.     As she was doing this P.O. Henry approached Ms. Munoz and physically separated her from her son.  P.O. Henry then stated, "I have had enough of you.  I have had enough of you talking to the EMS workers.  That is enough.  You are under arrest."

45.     Ms. Munoz was then placed in handcuffs and under arrest, which was witnessed by C.B.

46.     C.B. was taken to Jacobi Medical Center, where he was released into his uncle's custody within an hour of his arrival.

47.     Ms. Munoz was taken to the 49th Precinct in The Bronx, where she was detained for approximately eight hours.

48.     While in custody at the 49th Precinct, she was taken to the second floor to meet with a detective (name unknown).  The detective asked her a series of questions, including, "Do you know anyone at IAB [the NYPD's Internal Affairs Bureau], CCRB [the Civilian Complaint

Review Board], or NYPD?"  When she asked the detective why he wanted to know this information, he responded, "I just want to know."

49.     After being questioned by the detective, Ms. Munoz was escorted downstairs by P.O. Henry, who stated, "Had you kept your mouth shut this would not have happened."  After Ms. Munoz had her pedigree information, fingerprints and photos taken, she was returned to a cell, where she waited for several hours.

50.     Finally, a Lieutenant approached her while she was in the holding cell and informed her that she was being released with a Desk Appearance Ticket.  He claimed the only reason she was being released was because there was no "special cell" available for her in Bronx Central Booking.

51.      Ms. Munoz was arraigned on August 1, 2017 at Bronx Criminal Court.  At her arraignment, the Bronx County District Attorney's office charged her with one count of Obstructing Governmental Administration, a violation of New York Penal Law § 195.05.

52.     Ms. Munoz was offered an Adjournment in Contemplation of Dismissal pursuant to Criminal Procedure Law § 170.55 to resolve her case.  She rejected that offer.

53.     On August 14, 2017, a meeting was held at the request of the Bronx District Attorney's office between Ms. Munoz, her attorney, an Assistant District Attorney from the Bronx District Attorney's Office and a Supervising Assistant District Attorney from the Bronx District Attorney's Office.

54.     At the meeting, Ms. Munoz explained to the District Attorney's Office what happened to her.  At the end of the meeting, the Supervising Attorney stated that he was sorry, that the case should have never been filed by his office, and that her case would be dismissed and sealed immediately.

55.     Her case was dismissed and sealed on August 14, 2017.

56.     Ms. Munoz's employment was directly affected by the unlawful and unconstitutional actions of the City and its employees.  Her superiors at Parole stripped her of her weapon and placed her on modified duty for more than three months.

57.     Additionally, the experience was humiliating and caused her substantial emotional distress.

58.     Ms. Munoz also incurred medical expenses as a result of her son's unnecessary hospitalization.

59.     C.B. was traumatized by his own arrest.

60.     For weeks after the incident, he was afraid to leave his house and go to school.

61.     A few weeks after the incident, when he saw an ambulance outside his home, he panicked.

62.     C.B. is now fearful of police and when he sees Ms. Munoz's handcuffs, he experiences anxiety.

63.     As a result of the actions of Defendants, both Ms. Munoz and C.B. suffered loss of liberty, mental anguish, fright, apprehension, and humiliation, and deprivation of their constitutional rights, among other things.

## FIRST CAUSE OF ACTION: MUNICIPAL LIABILITY
### *On behalf of Plaintiff Munoz as next friend to C.B. against Defendants City of New York, O'Neill, and Nigro*

64.     Plaintiff repeats and re-alleges each every allegation contained in her Complaint with the same force and effect as if fully set forth herein.

65.     The aforesaid occurrence was due to the policy, custom and practice of Defendant City of New York and/or its supervisors and policymakers, and their willful indifference to the

training, supervision, disciplining, and retention of the individual Defendants, which caused a blatant violation of Plaintiff's civil rights.

66. The municipal defendants arrested and hospitalized C.B. in the absence of any evidence of any mental health crisis warranting his detention, arrest and hospitalization, notwithstanding their knowledge that said arrest and hospitalization would jeopardize C.B.'s liberty, well-being, safety and constitutional rights.

67. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and EMTs, with all the actual and/or apparent authority attendant thereto.

68. These individual defendant police officers and EMTs were acting in their capacities pursuant to the customs, polices, usages, practices, procedures and rules of the City of New York, the NYPD, and the FDNY, all under the supervision of ranking officers of said departments.

69. The existence of the above-mentioned unconstitutional customs and policies may be inferred from the repeated instances of similar wrongful conduct involving the unlawful detention of individuals in a mental health crisis.  They are documented by the facts alleged in the following sampling of civil rights actions filed against the City of New York:

> a) <u>Kenneth Eng v. City of New York</u>, United States District Court, Southern District of New York, 06 Civ. 5206;
>
> b) <u>Marina Tsesarskaya v. City of New York</u>, United States District Court, Southern District of New York, 11 Civ. 4897;
>
> c) <u>Kamilah Brock v. City of New York</u>, United States District Court, Southern District of New York, 15 Civ. 1832;
>
> d) <u>Matthews v. City of New York</u>, United States District Court, Southern District of New York, 15 Civ. 2311.

70.     Moreover, the issue of children being removed from school unlawfully by the FDNY's Emergency Medical Services ("EMS"), despite not being in need of emergency care, was the subject of a recent class action lawsuit, T.H. v. Farina et al., United States District Court, Southern District of New York, 13 Civ. 8777.  That case highlighted a disturbing pattern of FDNY and NYPD officials requiring children to be removed to a hospital without parental consent.

71.     A settlement in that case was approved in January 2015.  The settlement required EMS to consider a student's parent's refusal to consent to a child's transport to the hospital "consistent with its policies and procedures governing refusal of medical aid (EMSC OGP 106-104), treatment and transport of a minor (EMSC OGP 106-05) and assignments involving an EDP (emotionally disturbed person) (EMSC OGP 106-108)."  *See T.H. et al. v. Farina et al.,* 13-cv-8777 (JLC), ECF No. 71.

72.     Additionally, as referenced above, the New York City Department of Investigation released a report in January of 2017 highlighting the substantial lack of training NYPD officers receive in responding to individuals experiencing a mental health crisis.

73.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, the NYPD and the FDNY (including each Defendant's failure to train its employees in dealing with an individual in a mental health crisis) constituted a deliberate indifference to the safety, well-being and constitutional rights of C.B.

74.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, the New York City Police and Fire Departments, and HHC were the direct and proximate cause of the constitutional violations suffered by C.B. as alleged herein.  As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of

New York, the NYPD and the FDNY, C.B. was falsely arrested and wrongfully hospitalized. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of C.B.

### SECOND CAUSE OF ACTION: FALSE ARREST UNDER 42 U.S.C. § 1983
***On behalf of Plaintiff Munoz individually against all Police Officer Defendants***

75.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

76.     As a direct and proximate result of Defendants' actions as set forth herein, Plaintiff was deprived of the rights, privileges and immunities secured to her under the constitution and the laws of the United States, including, but not limited to, her rights under the First, Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be secure in her person, to be free from unreasonable searches and seizures, to her due process right to be free from false arrest and false imprisonment and punishment without due process.

77.     The Defendants acted with malice or with reckless disregard for whether Plaintiff's rights would be violated by their actions.

78.     As a result of the aforesaid violation of Plaintiff's rights, she sustained grievous personal emotional distress, was deprived of their liberty, suffered employment consequences, and was subjected to ridicule, scorn and humiliation by those observing and/or knowing of her arrest, detention and prosecution.

79.     Plaintiff seeks compensatory damages from all Defendants, as well as punitive damages from all the individual Defendants.

### THIRD CAUSE OF ACTION: FALSE ARREST UNDER 42 U.S.C. § 1983
***On behalf of Plaintiff Munoz as next friend to C.B. against***
***all Police Officer Defendants and EMT Defendants***

14

80.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

81.     As a direct and proximate result of Defendants' actions as set forth herein, C.B. was deprived of the rights, privileges and immunities secured to him under the constitution and the laws of the United States, including, but not limited to, his rights under the First, Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be secure in his person, to be free from unreasonable searches and seizures, to his due process right to be free from false arrest and false imprisonment and punishment without due process.

82.     The Defendants acted with malice or with reckless disregard for whether C.B.'s rights would be violated by their actions.

83.     As a result of the aforesaid violation of Plaintiff's rights, he sustained grievous personal emotional distress, was deprived of his liberty, and was subjected to ridicule, scorn and humiliation by those observing and/or knowing of his arrest, detention and prosecution.

84.     Plaintiff as next friend to C.B. seeks compensatory damages from all Defendants, as well as punitive damages from all the individual Defendants.

## FOURTH CAUSE OF ACTION: FAILURE TO INTERVENE
### *On behalf of Plaintiff Munoz individually against all Police Officer Defendants*

85.     Plaintiff repeats and re-alleges each and every allegation contained in her Complaint with the same force and effect as if fully set forth herein.

86.     Each and every individual NYPD defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights.

87.     The individual NYPD defendants failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having had a realistic opportunity to do so.

88.     As a result of the aforementioned  conduct of the individual NYPD defendants, Plaintiff's constitutional rights were violated and she was subjected to false arrest, unlawful imprisonment, deprivation of due process, and false imprisonment.

### FIFTH CAUSE OF ACTION: FAILURE TO INTERVENE
*On behalf of Plaintiff Munoz as next friend to C.B. against all Police Officer Defendants and EMT Defendants*

89.     Plaintiff repeats and re-alleges each and every allegation contained in her Complaint with the same force and effect as if fully set forth herein.

90.     Each and every individual NYPD and EMT defendant had an affirmative duty to intervene on C.B.'s behalf to prevent the violation of his constitutional rights.

91.     The individual NYPD and EMT defendants failed to intervene on C.B.'s behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

92.     As a result of the aforementioned conduct of the individual NYPD and EMT defendants, C.B.'s constitutional rights were violated and he was subjected to false arrest, unlawful imprisonment, deprivation of due process, and false imprisonment.

### SIXTH CAUSE OF ACTION: FOURTEENTH AMENDMENT
*On behalf of Plaintiff Munoz individually and as next friend to C.B. against all Police Officer Defendants and EMT Defendants*

93.     Plaintiff repeats and re-alleges each and every allegation contained in her Complaint with the same force and effect as if fully set forth herein.

94.     By removing C.B. involuntarily and without any legal basis to an emergency room against Plaintiff's instructions and without her consent where there was no urgent medical necessity, defendants violated Plaintiff's right to authorize and direct the medical care given to her child.

95.     By forcibly removing C.B. to an emergency room against and without Plaintiff's consent where there was no urgent medical necessity, defendants violated the liberty interest of Plaintiff and her child to association and family integrity.

96.     A claim for violation of plaintiffs' rights under the United States Constitution is made actionable by 42 U.S.C. Section 1983.

### SEVENTH CAUSE OF ACTION: MALICIOUS PROSECUTION
*On behalf of Plaintiff Munoz individually against the Police Officer Defendants*

97.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

98.     Defendants were directly and actively involved in the initiation and continuation of criminal proceedings against Plaintiff.

99.     Defendants lacked probable cause to initiate and continue criminal proceedings against Plaintiff.

100.    The criminal proceedings against Plaintiff were terminated in her favor.

101.    As a result of Defendants' lack of probable cause to arrest Plaintiff and inability to state a legally sufficient claim against him, these criminal proceedings were terminated in favor of Plaintiff on August 14, 2017.

102.    As a result of the aforesaid violation of Plaintiff's rights, she sustained grievous personal emotional distress, was deprived of her liberty, suffered employment consequences, and was subjected to ridicule, scorn and humiliation by those observing and/or knowing of her arrest, detention and prosecution.  Plaintiff seeks compensatory damages from all Defendants, as well as punitive damages from all the individual Defendants.

### PENDANT STATE LAW CLAIMS

103.    Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

104.    On or about August 22, 2017, and within 90 days after the claim herein accrued, Plaintiff served upon and filed with the City of New York Notices of Claims on behalf of her and C.B. setting forth all facts and information required under the General Municipal Law § 50-e.

105.    The City of New York has wholly neglected or refused to make an adjustment or payment to Plaintiff and more than 30 days have elapsed since her Notices of Claim were accepted by the City.

106.    The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which was conducted on October 10, 2017.

107.    This action is being commenced within one year and 90 days after Plaintiff's cause of action accrued and she has complied with all conditions precedent to maintaining the instant action pursuant to New York State and local law.

## EIGHTH CAUSE OF ACTION: FALSE ARREST
### *On behalf of Plaintiff Munoz individually against all Police Officer Defendants*

108.    Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.  The acts of Defendants, acting under color of law, in subjecting Plaintiff to unlawful search and seizure, and arrest, were done without reasonable suspicion or probable cause and were designed and did cause, specific and serious emotional harm, pain and suffering to the Plaintiff in violation of her Constitutional rights as guaranteed by Article I, Section 12 of the Constitution of the State of New York.

109.    The foregoing acts and conduct of Defendants were a direct and proximate cause of injury and damage to Plaintiffs and violated their rights as guaranteed by the Constitution of the State of New York.

### NINTH CAUSE OF ACTION: FALSE ARREST
*On behalf of Plaintiff as next friend to C.B. against all*
*Defendant Police Officers and EMTs*

110.    Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.  The acts of Defendants, acting under color of law, in subjecting C.B. to unlawful search and seizure, and arrest, were done without reasonable suspicion or probable cause and were designed and did cause, specific and serious emotional harm, pain and suffering to C.B. in violation of his Constitutional rights as guaranteed by Article I, Section 12 of the Constitution of the State of New York.

111.    The foregoing acts and conduct of Defendants were a direct and proximate cause of injury and damage to Plaintiffs and violated their rights as guaranteed by the Constitution of the State of New York.

### TENTH CAUSE OF ACTION: FALSE IMPRISONMENT
*On behalf of Plaintiff individually against all Defendant Police Officers and EMTs*

112.    Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

113.    The acts of Defendants, acting under color of law, caused Plaintiff to be falsely imprisoned, and her liberty was restricted for an extended period of time, she feared for her safety, and she was humiliated.  She did not consent to such confinement, which was without probable cause and was not otherwise privileged.

114.    As a result, she suffered mental injury, embarrassment, shock, and loss of freedom.

### ELEVENTH CAUSE OF ACTION: FALSE IMPRISONMENT
*On behalf of Plaintiff as next friend to C.B. against all Defendant Police Officers and EMTs*

115.     Plaintiff repeats and re-alleges each and every allegation contained in this Complaint with the same force and effect as if set forth herein.

116.     The acts of Defendants, acting under color of law, caused C.B. to be falsely imprisoned, and his liberty was restricted for an extended period of time, he feared for his safety, and he was humiliated.  He did not and could not consent to such confinement, which was without legal justification and was not otherwise privileged.

117.     As a result, C.B. suffered mental injury, embarrassment, shock, and loss of freedom.

## **JURY DEMAND**

118.     The Plaintiff respectfully demands that this proceeding be tried by a jury.

WHEREFORE, Plaintiff prays for the following relief:

1)       For a declaratory judgment under 28 U.S.C. Sec. 2201 declaring that the Defendants, separately and in concert, violated the Plaintiff and C.B.'s constitutional rights; and

2)       For compensatory damages against all Defendants; and

3)       For punitive damages against the individual Defendants; and

4)       For attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

5)       For such other relief as is just and proper.

DATED:       New York, New York
             May 31, 2018

Respectfully submitted,

BERANBAUM MENKEN LLP


_____*s/Scott Simpson*_____
Scott Simpson
80 Pine Street, 33rd Floor
New York, New York 10005
(212) 509-1616
(212) 509-8088
ssimpson@nyemployeelaw.com