Index No. 17 Civ. 9583 (LAK) (DF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WANDA MUNOZ, individually and as next friend to
minor child C.B.,

Plaintiffs,

-against-

CITY OF NEW YORK, a municipal entity, P.O. KATHY
HENRY, P.O. RAINARD WROTEN, LT. RYAN
PIERCE, P.O. ROAN LEWIS, P.O. JAMES FICO, P.O.
JONYA MCDOWELL, P.O. ANTONIO LOMEDICO,
P.O. KENNETH WOISIN, EMERGENCY MEDICAL
TECHNICIAN ERNESTO MEJIA, EMERGENCY
MEDICAL TECHNICIAN BRUNY ORTEGA-
GARCIA, JAMES P. O'NEILL, as Commissioner of the
New York City Police Department, DANIEL A. NIGRO,
as Commissioner of the New York City Fire Department,
sued herein in their official and individual capacities,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT PURSUANT TO RULE 56 OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

### JAMES E. JOHNSON

*Corporation Counsel of the City of New York*
*Attorney for Defendant City*
*100 Church Street - Room 3-169*
*New York, NY  10007*

*Of Counsel:  Elissa Fudim*

*Tel:  (212) 356-2335*

## TABLE OF CONTENTS

STATEMENT OF FACTS ..................................................................................................... 1

STANDARD OF REVIEW  .................................................................................................. 4

ARGUMENT  ....................................................................................................................... 4

    POINT I: C.B.'S CLAIM FOR FALSE ARREST FAILS AS A MATTER OF LAW ........ 4

        (A) Handcuffing C.B. Was Lawful From The Outset .............................................. 5

        (B) There Was Probable Cause To Arrest C.B. ....................................................... 6

        (C) C.B.'s Detention Was Also Privileged Under The Mental Hygiene Law
        And/Or Defendants Are Entitled To Qualified Immunity For Plaintiff's
        Detention. ................................................................................................................ 7

        (D) The EMT Defendants Are Not Liable For False Arrest ................................... 11

    POINT II: MUNOZ'S CLAIM FOR FALSE ARREST FAILS AS A MATTER OF LAW
    ................................................................................................................................... 13

    POINT III: THE EXISTANCE OF PROBABLE CAUSE DEFEATS PLAINTIFF
    MUNOZ'S CLAIM FOR MALICIOUS PROSECUTION ................................................... 16

    POINT IV: PLAINTIFFS' CLAIMS FOR FAILURE TO INTERVENE FAIL .................. 17

    POINT V: CLAIMS AGAINST COMMISSIONERS O'NEILL AND NIGRO  IN
    THEIR INDIVIDUAL CAPACITIES MUST BE DISMISSED FOR LACK OF
    PERSONAL INVOLVEMENT AND ANY CLAIMS AGAINST THE
    COMMISSIONERS IN THEIR OFFICIAL CAPACITIES ARE MOOT........................... 18

CONCLUSION   ................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Anderson v. Branen.,
  17 F.3d 552 (2d Cir. 1994)............................................................................................17

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).....................................................................................................4

Anthony v. City of New York,
  2001 U.S. Dist. LEXIS 8923 (S.D.N.Y. 2001) aff'd, 339 F.3d 129 (2d Cir.
  2003) .......................................................................................................................8, 11

Arroyo v. City of New York,
  2016 U.S. Dist. LEXIS 89274 (S.D.N.Y. 2016), aff'd 682 Fed. Appx. 73 ..............10

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)....................................................................................................18

Barrington v. Johnson,
  2006 U.S. Dist. LEXIS 86354 (S.D.N.Y. Nov. 27, 2006).........................................18

Bayne v, Provost,
  2005 U.S. Dist. LEXIS 40889 (N.D.N.Y. 2005) .......................................................11

Breitkopf v. Gentile,
  41 F. Supp. 3d 220, 2014 U.S. Dist. LEXIS 121581 (E.D.N.Y. 2014) ....................13

Brown v. City of N.Y.,
  No. 15-cv-6217 (BMC) (LB), 2016 U.S. Dist. LEXIS 177416 (E.D.N.Y. Dec.
  21, 2016) ......................................................................................................................7

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986).....................................................................................................4

Chepilko v. City of N.Y.,
  2012 U.S. Dist. LEXIS 15110 (E.D.N.Y. Feb. 6, 2012).............................................17

City of Canton v. Harris,
  489 U.S. 378 (1989)....................................................................................................20

City of Los Angeles v. Heller,
  475 U.S. 796 (1986)..................................................................................................9, 20

Colon v. Coughlin,
  58 F.3d 865 (2d Cir. 1995).........................................................................................18

Decker v. Campus,
    981 F.Supp. 851 (S.D.N.Y. Nov. 7, 1997)....................................................................14

Dixon v. City of N.Y.,
    2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017) .......................................20

Dove v. Fordham Univ.,
    56 F.Supp.2d 330 (S.D.N.Y. Jun. 14, 1999) .............................................................18

Fana v. City of New York,
    No. 15 CV 8114 (PGG), 2018 U.S. Dist. LEXIS 51579 (S.D.N.Y. Mar. 27,
    2018) ..........................................................................................................................13

Faruki v. City of N.Y.,
    517 F. App'x 1 (2d Cir. 2013) .............................................................................16, 17

Feinberg v. City of N.Y.,
    2004 U.S. Dist. LEXIS 16098 (S.D.N.Y. Aug. 12, 2004) ........................................17

Garcia v. City of Westchester,
    2017 U.S. Dist. LEXIS 191980 (S.D.N.Y. Nov. 20, 2017) ......................................15

Hayden v. City of N.Y.,
    No. 7-CV-01894-RJS (E.D.N.Y. March 31, 2019) (decision attached in
    Appendix ) ..................................................................................................................14

Hunter v. Bryant,
    502 U.S. 224 (1991) (per curiam)..............................................................................10

Husbands v. City of N.Y.,
    2007 U.S. Dist. LEXIS 61042 (S.D.N.Y. Aug. 16, 2007) ........................................14

Jackson v. Cnty. of Nassau,
    2009 U.S. Dist. LEXIS 11547 (E.D.N.Y. Feb. 13, 2009).........................................18

Johnson v. City of N.Y.,
    No. 15-CV-1625 (SMG), 2017 U.S. Dist. LEXIS 62042 (E.D.N.Y. Apr. 24,
    2017) ............................................................................................................................7

Jones v. N.Y.,
    No. 16-CV-556 (AJN), 2019 U.S. Dist. LEXIS 163418 (S.D.N.Y. Sep. 23,
    2019) ............................................................................................................................9

Kass v. City of N.Y.,
    864 F.3d 200 (2d Cir. 2017)................................................................................13, 14

Katzev v. Newman,
    2000 U.S. Dist. LEXIS 187 (S.D.N.Y. Jan. 5, 2000) ...............................................16

ii

Kerman v. City of New York,
    374 F.3d 93 (2d Cir. N.Y. 2004)..................................................................................7

Knight v. U.S. Fire Ins. Co.,
    804 F.2d 9 (2d Cir. 1986) ...........................................................................................4

Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,
    192 F.3d 337 (2d Cir. 1999)........................................................................................4

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)..........................................................................................9

Manganiello v. City of N,Y.,
    612 F.3d 149 (2d Cir. 2010).......................................................................................16

Manuel v. City of Joliet,
    137 S. Ct. 911 (2017)...................................................................................................5

Mitchell v. City of N.Y.,
    2014 U.S. Dist. LEXIS 17147 (S.D.N.Y. Feb, 11, 2014).........................................16

Mittelman v. City of Rockland,
    No. 07-cv-6382(CM) (LMS), 2013 U.S. Dist. LEXIS 46382 (S.D.N.Y. Mar.
    26, 2013) ......................................................................................................................7

Monell v. N.Y. City Dep't of Soc. Servs.,
    436 U.S. 658 ........................................................................................................19, 20

Parkash v. Town of Southeast,
    2011 U.S. Dist. LEXIS 128545 (S.D.N.Y. Sep. 30, 2011) aff'd, 468 F. App'x
    80 (2d Cir. 2012)........................................................................................................16

Parratt v. Taylor,
    451 U.S. 527 (1981)....................................................................................................19

Pearson v. Callahan,
    555 U.S. 223 (2009)....................................................................................................10

Posr v. Killackey,
    2003 U.S. Dist. LEXIS 12755 (S.D.N.Y. July 25, 2003) ...........................................6

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995) ............................................................................................4

Roe v. City of Waterbury,
    542 F.3d 31 (2d Cir. 2008)..........................................................................................19

Rohman v. N.Y. City Tran. Auth.,
    215 F.3d 208 (2d Cir. 2000)..................................................................................16

Rubio v. City of N.Y.,
    No. 03 Civ. 1349 (SJ), 2005 U.S. Dist. LEXIS 44256 (E.D.N.Y. Apr. 22,
    2005) ......................................................................................................................8

Shabazz v. Coughlin,
    852 F.2d 697 (2d Cir. 1988)..................................................................................19

Swartz v. Insogna,
    704 F.3d 105 (2d Cir. 2013)..................................................................................17

Triano v. Town of Harrison, N.Y.,
    895 F. Supp. 2d 526 (S.D.N.Y. Sept. 26, 2017) ...................................................20

Twin Laboratories, Inc. v. Weider Health & Fitness,
    900 F.2d 566 (2d Cir. 1990)....................................................................................4

U.S. v. Alexander,
    907 F.2d 269 (2d Cir. 1990).....................................................................................5

U.S. v. Bailey,
    743 F.3d 322 (2d Cir. 2014).....................................................................................5

U.S. v. Newton,
    369 F.3d 659 (2d Cir. 2004).....................................................................................5

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994)....................................................................................18

Ying Jing Gan v. City of N.Y.,
    996 F.2d 522 (2d Cir. 1993)....................................................................................4

**Other State Cases**

People v. Beam,
    866 N.Y.S.2d 564 (N.Y. Sup. Ct. 2008) ...............................................................13

People v. De Bour,
    40 N.Y.2d 210, 386 N.Y.S.2d 375 (1976) ...............................................................8

People v. Mitchell,
    39 N.Y.2d 173, 383 N.Y.S.2d 246 (1976) ...............................................................8

People v. Molnar,
    98 N.Y.2d 328, 746 N.Y.S.2d 673 (2002) ...............................................................8

T.H. et al. v. Farina et al.,
    13-cv-8777 (JLC), ECF No. 71.......................................................................................11, 12

On May 30, 2017, police officers and EMTs were doing their job when they transported the 16 year-old plaintiff, C.B., to a hospital pursuant to the mental hygiene law. They did so after staff at plaintiff's after-school program reported that plaintiff, a very low-functioning autistic child, was throwing objects and violently attacking staff. Defendants saw first-hand the damage caused by C.B.'s rage. Their decision to take him to the hospital was reasonable and lawful. And, it would have been equally lawful had the officer defendants arrested C.B. for any number of offenses, such as harassment, criminal mischief, menacing or assault. Likewise, the defendant officers' decision to arrest C.B.'s mother, plaintiff Munoz, was supported by probable cause. She interfered with the defendants' attempt to place C.B. into the ambulance; she did so both verbally and by grabbing C.B's handcuffed arm. In fact, as a result of Munoz's physical interference, C.B., who was already in the ambulance, was pulled out of the vehicle. Defendants acted reasonably and their conduct with respect to both plaintiffs was supported by probable cause. Plaintiffs' claims, therefore, fail as a matter of law, and summary judgment should be granted to defendants.

## STATEMENT OF FACTS

In May 2017, plaintiff C.B., a very-low functioning autistic 16-year old, attended Lifespire, an after-school program for special needs children. Statement of Materials Facts ("SFM") at ¶¶ 1-2, 6, 8.  On May 30, 2017, at or about 5:56 in the evening, defendant officers received a radio report that at a nearby day program for the mentally disabled (Lifespire), a 17-year old male[1] was behaving violently, attacking staff, and destroying property. Id. at ¶¶ 6, 28-29. The dispatcher also stated that the child was a "biter" and referred to him as an "EDP", which means an "emotionally disturbed person." Id. at ¶ 28. Among the officers who heard the report

---

[1] Plaintiff was actually 16 at the time. SMF at ¶ 2.

1

and responded to the scene were officers Lewis, Woisin, Henry, Wroten, Fico, McDowell, Lomedico, Reyes, Chapparo[2] and Lt. Pierce. Id. at ¶ 29.

When they arrived, Officer Lewis observed C.B. - 5'6 and 230 pounds - pacing, throwing things, and otherwise destroying property. Id. at ¶¶ 2, 32. Among the destroyed property was:  a broken table, cabinets with broken and missing doors, a broken karaoke machine, a number of broken phones, and a broken water cooler. Id. at ¶¶ 35-36. Yesenia Ortega, the psyche coordinator at Lifespire, told the responding officers that C.B. had been behaving violently that day, swinging at staff members and destroying property. Id. at ¶ 33. She also told them that C.B. had behaved similarly the prior week, and at that time, had in fact bitten a staff member, sending that staff member to the hospital. Id. at ¶¶ 34, 48. Ms. Ortega showed the officers pictures of the bite wound. Id. Officers tried to calm C.B., but C.B. continued to wildly destroy property. Id. at ¶ 37. When one of the officers approached C.B., C.B. tried to punch the officer. Id. at ¶ 38. At that point, one of the officers handcuffed C.B. and sat him in a chair, where he began to rock back and forth. Id. at ¶¶ 39-40.

When defendant Lieutenant Ryan Pierce arrived at Lifespire, plaintiff was already handcuffed and seated in a chair. Id. at ¶¶ 43, 47. He too was informed by a Lifespire staff member that C.B. had been throwing objects around the room, and the week earlier had bitten an employee who then had to be hospitalized. Id. at ¶ 50. Consistent with what he was told, Lt. Pierce observed broken objects, including bathroom supplies, all over the floor. Id. at ¶ 49.

Meanwhile, at or about 5:58 p.m., Defendants Ernesto Mejia and Bruny Ortega-Garcia, emergency medical technicians with the fire department, had received a separate radio

---

[2] Reyes and Chapparo are not defendants in this matter.

report requesting an ambulance for an 18-year old male[3], who was "very violent", "throwing objects" and "trying to bite people". Id. at ¶ 30. They responded to Lifespire. Id. at ¶ 54.  Upon arrival, they too were informed by a staff member that C.B. was throwing things and had bitten a staff member the previous week. Id. at ¶ 34. Lt. Lewis and EMT Mejia determined that C.B. posed a danger to others and should be taken by ambulance to the hospital as an emotionally disturbed person rather than processed for an arrest. Id. at ¶ 52.

At some point thereafter, Munoz arrived at Lifespan. Id. at ¶ 57. She was told what had taken place and was informed that C.B. was going to be taken to the hospital. Id. at ¶¶ 56-58. Munoz became irate that her son was in handcuffs, and protested the decision to take him to the hospital. Id. at ¶¶ 59, 61. Munoz told the officers that she refused to allow C.B. to be taken to the hospital for evaluation. Id. at ¶ 62. The officers repeatedly told Munoz that C.B. needed to be evaluated at a hospital and that she needed to let them do their job. Id. at ¶¶ 60, 62-63. Meanwhile, nearby, an EMT was placing C.B. into the waiting ambulance. Id. at ¶ 64. Upon seeing this, Munoz pushed past a group of officers, and blocked the door of the ambulance with her body in an apparent attempt to prevent the EMTs from escorting C.B. onto the vehicle. Id. at ¶¶ 66-67. Munoz then physically pulled C.B. off the ambulance. Id. at ¶ 68. She did this by placing her left arm through C.B.'s handcuffed right arm. Id. C.B. stepped off the back of the ambulance. Id. at ¶71. Officer Henry then arrested Munoz for obstructing government administration. Id. at ¶ 73. Munoz was held for six hours and seventeen minutes and received a desk appearance ticket. Id. at ¶ 76. The charges against her were later dismissed. Id. at ¶ 78.

As for C.B., after his mother was arrested, he was transported to the hospital for a psychiatric evaluation; he was never charged with a crime. Id. at ¶ 72.

---

[3] Again, plaintiff was actually 16 at the time.

3

## STANDARD OF REVIEW

Summary judgment is appropriate where the movant "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion.  Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).  To survive summary judgment, however, the non-moving party must produce evidence to support her case and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993).  Instead, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986). Evidence that is "merely colorable or not significantly probative" is insufficient to defeat a motion for summary judgment. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 346 (2d Cir. 1999).

## ARGUMENT

## POINT I

## C.B'S CLAIM FOR FALSE ARREST FAILS AS A MATTER OF LAW.

C.B.'s claims for false arrest against the officer defendants fails in two regards: first, because the officers had probable cause to believe that C.B. posed a risk to himself or others (and therefore could be handcuffed, and taken to the hospital under the mental hygiene

4

law); and second, because there was probable cause to arrest C.B. for multiple offenses.  C.B.'s

claims for false arrest against the EMT defendants fares no better.[4]

## A.      Handcuffing C.B. Was Lawful From The Outset.

Although C.B. was never formally arrested, he was detained and handcuffed.[5]

But, this 'arrest' was lawful because officers may place a person in handcuffs without

implicating the Fourth Amendment's probable cause standard if they do so for their safety or the

safety of others. U.S. v. Bailey, 743 F.3d 322, 340 (2d Cir. 2014) ("[E]ven though handcuffs are

generally recognized  as a 'hallmark of a formal arrest,' not every use of handcuffs automatically

renders a stop an arrest requiring probable cause to satisfy Fourth Amendment reasonableness.

The relevant inquiry is whether police have a reasonable basis to think that the person detained

poses a present physical threat and that handcuffing is the least intrusive means to protect against

that threat.") (internal citations omitted); U.S. v. Newton, 369 F.3d 659, 674 (2d Cir. 2004)

("where an officer has a reasonable basis to think that the person stopped poses a present

physical threat to the officer or others, the Fourth Amendment permits the officer to take

'necessary measures …to neutralize the threat' without converting a reasonable stop into a de

facto arrest."); U.S. v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990) ("faced with the possibility

---

[4] Plaintiffs appear to assert their federal false arrest claims under the First, Fourth and Fourteenth Amendments. See Exhibit A (Second Amended Complaint) at Second, Third, and Sixth causes of action. The proper analysis is under the Fourth Amendment. See Manuel v. City of Joliet, 137 S. Ct. 911 (2017).

[5] C.B. levies his false arrest claim against each of the defendant officers. But plaintiff cannot establish who handcuffed him. Discovery did not resolve this question. According to plaintiff, there were more than twenty officers at the scene. See Ex. A (Second Amended Complaint), ¶ 33. Plaintiff sues only eight. With the exception of Officer Lewis, when each defendant officer entered the facility, C.B. was already in handcuffs. SMF at ¶¶ 41, 47. When Officer Lewis entered the facility, C.B. was not handcuffed; rather, he was pacing, screaming, throwing things, and destroying property. Id. at ¶ 32.  Officer Lewis was present when C.B. was placed in handcuffs, but did not personally handcuff C.B. or make the decision to do so. Id. at ¶ 39. Notwithstanding, even assuming *arguendo*, that each of the defendant officers participated in the decision to handcuff C.B., that decision was lawful as set forth herein.

of danger, [a police officer] has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders,  regardless of whether probable cause to arrest exists").

Here, the information provided by dispatch to the defendant officers was that C.B. was violent, attacking staff, and destroying property. SMF at 28. Ortega also informed the responding officers that C.B. had previously bitten a staff member who tried to approach him, and she cautioned the officers to be careful in approaching C.B. Id. at ¶¶ 33-34. Under these circumstances, the officers who handcuffed C.B. – whoever they were  –  acted reasonably in doing so and such conduct was not unlawful.

**B.      There Was Probable Cause To Arrest C.B.**

C.B.'s 'arrest' was also privileged because the officers had probable cause to believe that plaintiff had committed a variety of offenses. The officers were informed by dispatch and staff at Lifespire that C.B. was attacking staff, throwing things and destroying property. Id. at ¶¶ 28, 33-34. Officer Lewis personally observed plaintiff throwing things and destroying property. Id. at ¶ 32. This conduct gave rise to probable cause to arrest C.B. for harassment[6], criminal mischief[7], menacing[8], and even assault[9]. Posr v. Killackey, 2003 U.S. Dist. LEXIS 12755, at *15-16 (S.D.N.Y. July 25, 2003) ("Disorderly conduct and harassment offenses

---

[6]   "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." Penal Law § 240.26(1).

[7]   "A person  is  guilty  of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: 1. Intentionally damages property of another person…or 3. Recklessly  damages  property  of  another  person  in an  amount exceeding two hundred fifty dollars." Penal Law §145.00 sections 1 and 3.

[8]   "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." Penal Law § 120.15.

[9] "A person is guilty of assault in the third degree when: 1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or 2. He recklessly causes physical injury to another person." Penal Law § 120.00.

are 'essentially the same conduct' except that disorderly conduct is directed toward the public in general while harassment is directed against an individual") (internal citation omitted); Johnson v. City of N.Y., No. 15-CV-1625 (SMG), 2017 U.S. Dist. LEXIS 62042, at *17 (E.D.N.Y. Apr. 24, 2017) (probable cause to arrest for criminal mischief where plaintiff broke victim's cell phone); Brown v. City of N.Y., No. 15-cv-6217 (BMC) (LB), 2016 U.S. Dist. LEXIS 177416, at *6 (E.D.N.Y. Dec. 21, 2016) (probable cause for menacing in the third degree likely where plaintiff was loud and obnoxious, and threatened complainant with his words and behavior).

Because defendants had probable cause to arrest C.B., C.B.'s false arrest claim fails as a matter of law. Mittelman v. City of Rockland, No. 07-cv-6382(CM) (LMS), 2013 U.S. Dist. LEXIS 46382, at *34 (S.D.N.Y. Mar. 26, 2013) (Where plaintiff was taken into custody and transported to the hospital for psychiatric evaluation, plaintiff had no cause of action for false arrest, because, even putting aside plaintiff's psychiatric state, there was probable cause for a custodial arrest. Therefore, the court ruled, the "analysis could end there").

## C.    C.B.'s Detention Was Also Privileged Under The Mental Hygiene Law And/Or Defendants Are Entitled To Qualified Immunity For Plaintiff's Detention.

Defendants' detention of plaintiff was also privileged under the Mental Hygiene Law, as plaintiff appeared to be in need of psychiatric assistance.  Under Mental Hygiene Law § 9.41, police are entitled to take necessary action to assist a person in need of mental health treatment without implicating the doctrine of false arrest.  M.H.L. § 9.41; Mittelman, 2013 U.S. Dist. LEXIS 46382, at *34.  The Second Circuit has "interpreted this provision as imposing the same objective reasonableness standard that is imposed by the Fourth Amendment."  Kerman v. City of New York, 374 F.3d 93, 100 (2d Cir. N.Y. 2004) (internal quotation marks omitted). Thus, "under the Fourth Amendment, an officer may seize a person for a psychiatric evaluation if the officer has 'probable cause to believe that the person is dangerous to himself or others.'"

7

Anthony v. City of New York, 2001 U.S. Dist. LEXIS 8923, *16 (S.D.N.Y. 2001) aff'd, 339 F.3d 129 (2d Cir. 2003) (quoting Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997)).

The Mental Hygiene Law is consistent with the general precept that an individual's Fourth Amendment right to be free of seizure is not implicated in emergency situations where the role of the police is to render aid rather than to seize evidence or to make an arrest. Rubio v. City of N.Y., No. 03 Civ. 1349 (SJ) (KAM), 2005 U.S. Dist. LEXIS 44256, at *12 (E.D.N.Y. Apr. 22, 2005); People v. Molnar, 98 N.Y.2d 328, 746 N.Y.S.2d 673, 676 (2002) (citing Mincey v. Arizona, 437 U.S. 385, 392 (1978)); People v. Mitchell, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 248 (1976). In fact, New York State law recognizes a police officer's *affirmative* obligation to assist persons whom they reasonably believe to be in need. See, e.g., Rubio, 2005 U.S. Dist. LEXIS 44256, at *12; People v. Mitchell, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 248 (1976) (affirming denial of motion to suppress); People v. De Bour, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 381-82 (1976) (affirming denial of motion to suppress and conviction; recognizing the "public service aspect of the police function" and the "multiplicity and complexity of tasks assumed by the police").

Here, Lt. Pierce and the defendant officers[10] reasonably believed that C.B. was engaged in behavior which might reasonably be construed as threatening to himself or others. The officers had information from independent witnesses regarding CB's violent conduct. First, the officers received information from dispatch, apparently relayed from a 911 caller from C.B.'s after-school program, that C.B. was behaving violently, destroying property and attacking staff. See SMF, ¶ 28. Second, upon arrival, at least one officer, Lewis, observed C.B. actively

---

[10] Lt. Pierce is the only Officer Defendant who made the decision to transport C.B. to the hospital under the mental hygiene law, but as much as plaintiff levies his false arrest claim against each of the officer defendants, the decision was reasonable and privileged regardless of which officer(s) made it.

destroying property. Id., ¶ 32. Third, staff members informed the officers that several days earlier C.B. had an incident where he damaged property and bit a staff member. The pictures were shown to the officers. Id., ¶ 33-34, 48-50. Under these circumstances, defendants' detention of plaintiff was privileged. See Heller, 665 F.App'x at 53 (finding probable cause for the initial arrest and the hospital detention based on the police's access to plaintiff's delusional communications with another individual, an anonymous tip); Jones v. N.Y., No. 16-CV-556 (AJN), 2019 U.S. Dist. LEXIS 163418, at *16 (S.D.N.Y. Sep. 23, 2019) ("In the context of § 9.41, reports that an individual has threatened others or acted aggressively can be sufficient to support a finding of probable cause.")

Indeed, Jones is closely on point. There, officers received a 911 dispatch that an emotionally disturbed person (the plaintiff) was fighting with staff at a facility for homeless veterans. Id. at *18. When the police arrived, they observed the plaintiff acting aggressively and irrationally. Id. In addition, the program director told the officers that plaintiff was bipolar and had made violent threats against staff at the facility in the past. Id. at *8, *18. The Court found that considering the totality of the circumstances, the officers had probable cause to believe that plaintiff was mentally ill and posed a risk of harm to himself or others. Id. at *19-20. The same result applies here.

Even if plaintiffs dispute that C.B.'s behavior was suggestive of mental illness, defendants would still be entitled to qualified immunity based on their detention of plaintiff under the Mental Hygiene Law. "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). Qualified immunity is applicable regardless of "whether a

9

government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted). The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, a reasonable police officer could have thought that C.B. was presenting as an EDP. When they encountered C.B., he was in the presence of staff towards whom he been aggressive and threatening moments earlier.  C.B.'s behavior had apparently been so extreme that it precipitated a call to 911.  Nothing the officers heard or saw invalidated this information or served to diminish the officers' concerns.  Ortega even told the officers that just one week prior when plaintiff acted the same way, the situation escalated to the point where he bit a staff member severely enough to require his hospitalization.  Confronted with these circumstances, a reasonable officer could certainly conclude that C.B. posed a risk to himself or others and that seizure under the mental hygiene law was reasonable. See Arroyo v. City of New York, 2016 U.S. Dist. LEXIS 89274 at *12 (S.D.N.Y. 2016), aff'd 682 Fed. Appx. 73 (granting qualified immunity to officers who detained plaintiff pursuant to MHL § 9.41 based on their observations of plaintiff's erratic behavior combined with a 911 call that was corroborated by a witness with personal knowledge of plaintiff's conduct).

Indeed, the officers really had no viable alternative. Had they simply left C.B. at Lifespire, and had C.B. resumed his attack on staff or assaulted a child, the officers could have been accused of failing in their affirmative responsibility to render aid. Likewise, if they had released C.B. to his mother, and had he then attacked her, the officers could be held accountable.

10

See Anthony, 2001 U.S. Dist. LEXIS 8923 at *20-21 (granting qualified immunity to police officers who transported plaintiff to hospital, reasoning that the officers could later be accused of "callous indifference" had they not done so); see also Bayne v, Provost, 2005 U.S. Dist. LEXIS 40889, *28 (N.D.N.Y. 2005) (finding officers' seizure of plaintiff pursuant to MHL § 9.41 was reasonable when the alternative courses of action would not have feasibly ensured plaintiff's safety). Certainly, considering the totality of the circumstances, the officers' decision cannot be characterized as "plainly incompetent or a knowing violation of the law" and they are therefore entitled to qualified immunity.

**D.      The EMT Defendants Are Not Liable For False Arrest.**

C.B. sues the EMT defendants, Mejio and Ortega-Garcia, for false arrest for their role in transporting C.B. to the hospital. But that claim fails as a matter of law for the same reasons noted above. The EMTs, like the police, were reasonable in transporting C.B. to the hospital. The radio report they received conveyed that C.B. was violent and trying to bite people. SMF at ¶ 30. When they arrived at the scene, they too received a report from staff that C.B. was behaving aggressively and had even bitten someone the prior week. Id. at ¶ 54.  For the same reasons the police officer defendants had probable cause to direct the EMTs to take C.B. to the hospital pursuant to the Mental Hygiene Law, the EMTs likewise were likewise privileged in doing so.

Yet, in the Second Amended Complaint, plaintiffs allege that the EMT defendants failed to comply with a settlement agreement that was reached in T.H. et al. v. Farina et al., 13-cv-8777 (JLC), ECF No. 71, which required them to consider Munoz's refusal for C.B. to be transported to the hospital as an EDP. Exhibit A (Second Amended Complaint) at ¶ 71. Plaintiffs' contention is wrong both factually and legally.

11

The settlement in <u>Farina</u> does not pertain to the issues presented here. The settlement in <u>Farina</u> resulted in the creation of a new agency regulation for the Department of Education ("DOE"). <u>See</u> Chancellor Regulations § A-411.[11]  That DOE regulation created certain obligations for DOE schools when calling, or considering calling, 911 for a child exhibiting behavioral or emotional outbursts. <u>Id.</u>[12] Lifespire is not a DOE facility, and plaintiffs have no claims against Lifespire. The Regulation places no limitations on the application of Mental Hygiene Law § 9.411, nor does it require EMTs to defer to a parent's preference regarding the transportation of a child to the hospital under the Mental Hygiene Law. Rather, it states only that if a parent requests that his/her child *not* be transported to the hospital, that DOE staff will provide responding EMTs with relevant information from staff, the parent, and other witnesses, to allow the EMTs to consider "whether the parent's request may be honored in accordance with FDNY policies and procedures for Refusal of Medical Assistance." <u>Id</u>. at II(D). Here, notwithstanding the inapplicability of the regulation in the first instance, the EMTs were provided with relevant information from which to make a decision about whether C.B. needed to be taken to a hospital for an assessment. They were told by staff at Lifespire that C.B. was acting violent and destroying property, and that just a week earlier had bitten an employee. SMF at ¶ 54. Their decision to take C.B. to the hospital was reasonable and not precluded by the DOE regulation promulgated as a result of <u>Farina</u>. The EMTs cannot be held liable for false arrest under any analysis.

C.B.'s claim for false arrest fails in all respects, and should be dismissed.

---

[11] https://www.schools.nyc.gov/docs/default-source/default-document-library/a-411-english
[12] "This is a new Regulation. It establishes the Department of Education's ("DOE") policy and procedures regarding intervention and de-escalation, and contacting 911 for students experiencing behavioral crises. This Regulation shall become effective on August 1, 2015."

12

## POINT II.

## MUNOZ'S CLAIM FOR FALSE ARREST FAILS AS A MATTER OF LAW.

Under N.Y. Penal Law § 195.05, "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."  This offense has four elements: "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." Kass v. City of N.Y., 864 F.3d 200, 207 (2d Cir. 2017). Interference occurs "when an individual 'intrude[s] himself into, or get[s] in the way of, an ongoing police activity." Kass v. City of N.Y., 864 F.3d 200, 2010 (2d Cir. 2017) (internal citations omitted); Fana v. City of New York, No. 15 CV 8114 (PGG), 2018 U.S. Dist. LEXIS 51579, at *23-24 (S.D.N.Y. Mar. 27, 2018) (probable cause to arrest for OGA may be found "where an individual's refusal to obey orders evidences 'an attempt to interfere with [] officers' efforts to [address] . . . a volatile situation . . .'") (quoting Berger v. Schmitt, 91 F. App'x 189, 191 (2d Cir. 2004)). Stated differently, the law prohibits "an intentional insertion of one's self or one's intentions into steps taken by police officers to fulfill their duties." People v. Beam, 866 N.Y.S.2d 564, 567 (N.Y. Sup. Ct. 2008).  "Interrelated conduct - 'actions coupled with words'" is sufficient to satisfy the physical component requirement of obstructing governmental administration ("OGA").  Breitkopf v. Gentile, 41 F. Supp. 3d 220, 2014 U.S. Dist. LEXIS 121581, at *110-111 (E.D.N.Y. 2014).

Here, defendants were engaged in an official function when they were attempting to put C.B. into an ambulance. As they were doing so, Munoz pushed past the officers, blocked

13

the doors to the ambulance, and inserted herself into the situation. SMF at ¶¶ 66-71. Specifically, after C.B. managed to step up onto the back of the ambulance, Munoz placed her left arm through C.B.'s right arm, the result of which was that he stepped back down off the ambulance. Id. at ¶68. While Munoz now claims that she was just assisting C.B. *into* the ambulance, the officers perceived her conduct as an attempt to pull C.B. *out* of the ambulance. Id. at ¶¶ 69-70. This was a reasonable conclusion given that Munoz was simultaneously protesting her son's transportation to the hospital. Specifically, she stated "I am refusing medical services for him", "please release him", and referred to C.B.'s transportation to the hospital as "a waste of time". Id. at ¶ 62. Further, the effect of Munoz's conduct was that C.B. came down off the ambulance. Id. at ¶ 71. Courts in this Circuit have held that "an officer may consider both words and deeds in determining whether the individual's conduct is sufficiently obstructive to justify an arrest," Kass, 864 F.3d at 209, and district courts ought to consider the "'totality of the circumstances' in deciding whether probable cause exists to effect an arrest." Husbands v. City of N.Y., 2007 U.S. Dist. LEXIS 61042, *44 (S.D.N.Y. Aug. 16, 2007). Considering the totality of the circumstances, i.e. Munoz's physical conduct coupled with her verbal statements, the officers were entirely reasonable in believing she was seeking to interfere in the placement of C.B. into the ambulance. See Hayden v. City of N.Y., No. 7-CV-01894-RJS (E.D.N.Y. March 31, 2019) (decision attached in Appendix) (finding probable cause to arrest plaintiff for OGA where plaintiff interfered with EMT and police officers' efforts to place EDP into an ambulance, specifically repeatedly criticizing their efforts and refusing to move back); Decker v. Campus, 981 F.Supp. 851, 858 (S.D.N.Y. Nov. 7, 1997) (probable cause to arrest for OGA where plaintiff failed to comply with a deputy sheriff's instructions to 'step back' . . . [and] [a]dditionally [ ] approached a rescue worker, touched his arm, and asked him questions, while the worker was

14

trying to save [his wife's] life."). Accordingly, there was probable cause to arrest Munoz for OGA.

Moreover, even if probable cause were lacking (it is not), defendants would still be entitled to qualified immunity because there was at least arguable probable cause to arrest Munoz for OGA. See Garcia v. City of Westchester, 2017 U.S. Dist. LEXIS 191980, at *59 (S.D.N.Y. Nov. 20, 2017) (noting there have been cases in this Circuit where "merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction for OGA."). Yet, here, Munoz went beyond just voicing her opposition to C.B.'s transport to the hospital; she pushed her way past police, sought to block the ambulance door, and while C.B. was handcuffed, placed her left arm through his right arm. Under the totality of circumstances – i.e. Munoz's continual objections to the officers' decision to transport C.B. to the hospital, her close proximity to the ambulance, her physical contact with C.B. who was being placed onto the ambulance, her words of refusal to transport C.B., and C.B. actually coming off the ambulance sometime during Munoz's contact with him – officer Henry was reasonable in believing that Munoz interfered with the official functions of not only the police officers who had C.B. in custody but with EMTs who were attempting to place him onto the ambulance.

Therefore, because at the very least arguable probable cause existed to arrest Munoz for obstructing governmental administration, defendant officers and EMTs are protected by qualified immunity and Munoz's claim for false arrest must be dismissed.

**POINT III**

**THE EXISTENCE OF PROBABLE CAUSE DEFEATS
MUNOZ'S CLAIM FOR MALICIOUS PROSECUTION.**

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello v. City of N,Y., 612 F.3d 149, 161-62 (2d Cir. 2010). As set forth above, defendants had probable cause to arrest Munoz, and nothing occurred thereafter to vitiate probable cause. Accordingly, Munoz's malicious prosecution claim fails. It also fails because Munoz did not suffer a post-arraignment deprivation of liberty.

Under § 1983, a malicious prosecution claim requires "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y. City Tran. Auth., 215 F.3d 208, 215 (2d Cir. 2000). Specifically, a plaintiff must show a deprivation of liberty consistent with the concept of "seizure." Receipt of a Desk Appearance Ticket does not rise to the level of a malicious prosecution. Mitchell v. City of N.Y., 2014 U.S. Dist. LEXIS 17147, *19 (S.D.N.Y. Feb, 11, 2014); Katzev v. Newman, 2000 U.S. Dist. LEXIS 187 (S.D.N.Y. Jan. 5, 2000) (holding that "the receipt of a desk appearance ticket cannot serve as the predicate deprivation of liberty for malicious prosecution because it occurred prior to an arraignment and without a warrant, and therefore was not pursuant to legal process."); Parkash v. Town of Southeast, 2011 U.S. Dist. LEXIS 128545, *15-16 (S.D.N.Y. Sep. 30, 2011) (plaintiff who was required to appear in court on fifteen occasions without any additional restrictions was not subject to seizure under the Fourth Amendment) aff'd, 468 F. App'x 80 (2d Cir. 2012); Burg v. Gosselin (591 F.3d 95 (2d Cir. 2010) ("the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."); Faruki v. City of N.Y., 517 F. App'x 1, 2 (2d Cir. 2013) (finding that a plaintiff's claim for malicious prosecution fails where the proceedings "placed no

16

restriction on her other than a requirement that she appear in court on two occasions."); but, see Swartz v. Insogna, 704 F.3d 105, 108, 112 (2d Cir. 2013) (finding a post-arraignment seizure where plaintiff was required to return to court a total of three times over the course of years in connection with the pending charges.)

Here, Munoz was issued a Desk Appearance Ticket at the police precinct, and returned to Bronx Criminal Court on August 1, 2017 for her arraignment. SMF at ¶¶ 73, 76. Munoz's case was then dismissed thirteen days later, on August 14, 2017 – prior to her first post-arraignment court date which had been scheduled for August 22, 2017. Id., at ¶ 78-79. This is not a sufficient liberty deprivation to sustain a claim for malicious prosecution. Faruki v. City of N.Y., 517 F. App'x at 2. Therefore, plaintiff Munoz's claim for malicious prosecution must be dismissed.

**POINT IV**

**PLAINTIFFS' CLAIMS FOR FAILURE TO INTERVENE FAIL.**

To prevail on a § 1983 claim for failure to intervene a plaintiff must show that a police officer "observes or has reason to know that [other officers] are violating a person's constitutional rights [ ] or making an unjustifiable arrest." Chepilko v. City of N.Y., 2012 U.S. Dist. LEXIS 15110, *25 (E.D.N.Y. Feb. 6, 2012) (citing to Anderson v. Branen., 17 F.3d 552, 557 (2d Cir. 1994). However, without a constitutional violation there can be no failure to intervene. Feinberg v. City of N.Y., 2004 U.S. Dist. LEXIS 16098, *12-13 (S.D.N.Y. Aug. 12, 2004) (finding that "since Defendants had probable cause to arrest and charge the Plaintiff, Defendants' motion for summary judgment on this claim is granted."). Here, there was probable cause to arrest both plaintiffs, and to transport C.B. to the hospital under the mental hygiene law, and thus, no underlying constitutional violation. Therefore, plaintiffs' claims for failure to intervene must be dismissed.

17

Additionally, plaintiff has not established that any of the defendants had an opportunity to intervene in any of the conduct in which they were not directly involved. For this additional reason, plaintiff's failure to intervene claim fails.

## POINT V

### CLAIMS AGAINST COMMISSIONERS O'NEILL AND NIGRO IN THEIR INDIVIDUAL CAPACITIES MUST BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT AND ANY CLAIMS AGAINST THE COMMISSIONERS IN THEIR OFFICIAL CAPACITIES ARE MOOT.

The personal involvement of a defendant is a prerequisite to a finding of a constitutional violation under § 1983. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). A defendant in a § 1983 claim cannot be held liable simply because he holds a high position of authority. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Rather, "each Government official . . . is only liable for his … own misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). "Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted. Dove v. Fordham Univ., 56 F.Supp.2d 330 (S.D.N.Y. Jun. 14, 1999) (quotations omitted). In cases involving high ranking officials, including commissioners, allegations against such officials are routinely dismissed where a plaintiff fails to allege the personal involvement of that official. Jackson v. Cnty. of Nassau, 2009 U.S. Dist. LEXIS 11547, at *7-10 (E.D.N.Y. Feb. 13, 2009) (denying leave to amend to name Nassau County Police Commissioner as a defendant where complaint was "devoid of specific factual allegations" against him); Barrington v. Johnson, 2006 U.S. Dist. LEXIS 86354, at *5-6 (S.D.N.Y. Nov. 27, 2006) (dismissing claims against Police Commissioner Kelly where complaint failed to allege that he was personally involved in the constitutional violation). Any claims against such high ranking officials in their official capacity are essentially suits against a

18

government entity and are therefore moot. Shabazz v. Coughlin, 852 F.2d 697 (2d Cir. 1988) (clarifying that "[p]ersonal or individual capacity suits seek to impose personal liability upon a government official for actions he or she took under color of state law. Official capacity suits, on the other hand, are in all respects other than name, suits against a government entity.").

Here, plaintiffs have failed to plead, let alone establish through discovery, any personal involvement of either former Police Commissioner O'Neill or Fire Department Commissioner Nigro in the underlying incident. Therefore, any claims against these two defendants in their individual capacities are wholly without merit. Furthermore, any claims against them in their official capacities are essentially claims against the City of New York and are therefore moot.

## POINT VI

### PLAINTIFFS HAVE NOT BEEN DEPRIVED OF ANY CONSTITUTIONAL RIGHTS AND THEREFORE CANNOT SHOW THAT AN OFFICIAL POLICY OF THE MUNICIPALITY CAUSED A CONSTITUTIONAL INJURY.

To prevail on a §1983 claim against the City under Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, plaintiff must plead, and ultimately prove that an underlying constitutional violation was committed by a state actor acting under color of law. Parratt v. Taylor, 451 U.S. 527, 535 (1981). In doing so, the plaintiff must show "(i) actions taken under color of law; (ii) deprivation of a constitutional or statutory right; (iii) causation; (iv) damages; and (v) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). The plaintiff must demonstrate that the municipality's "policies are the moving force [behind] the constitutional violation." Sullivan, 2018 U.S. Dist. at *37. "[B]oilerplate and conclusory allegations [are] not sufficient to demonstrate that the City has a municipal policy or custom" that causes a plaintiff to be deprived

19

of his constitutional rights. <u>Dixon v. City of N.Y.</u>, 2017 U.S. Dist. LEXIS 119042, *8 (S.D.N.Y. July 27, 2017); <u>see</u> <u>also</u> <u>Triano v. Town of Harrison, N.Y.</u>, 895 F. Supp. 2d 526, 533, 536 (S.D.N.Y. Sept. 26, 2017) (granting defendant's motion to dismiss where plaintiff made "little more than vague, conclusory allegations" that the town had "permitted, tolerated and encouraged a pattern and practice of unjustified, unreasonable and illegal abuses of persons by its police officers," had "covered up" such abuses, and had "systemically failed to identify the improper abuse, misuse, violative acts and brutality by police officers and officials while further failing to subject such officers and officials to discipline, closer supervision or restraint."). "To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in Monell." <u>City of Canton v. Harris</u>, 489 U.S. 378, 399 (1989) (quoting <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 831 (1985). Here, plaintiff cannot establish any of the elements of a municipal liability claim. Moreover, because there is no underlying constitutional violation here, there can be no municipal liability claim. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be <u>Monell</u> liability).

## CONCLUSION

On May 30, 2017, defendants were faced with a volatile situation. They responded to Lifespire after receiving a 911 call that C.B. was being violent, attacking staff and destroying property. The dispatcher relayed that C.B. was a biter, and when defendants arrived at the scene, they learned that C.B. had previously bitten a staff member so severely the staff member had to go to the hospital. The facility's trained psyche coordinator was sufficiently concerned about C.B.'s behavior that she had removed all the other children from the room, and

20

another staff member called 911. Defendants saw first-hand the wreckage caused by C.B.'s outburst - destroyed property littering the floor. When an officer tried to approach him, C.B. swung a punch.  Though an adolescent, C.B. was not a small child, but rather was five foot six and two-hundred and thirty pounds. Faced with this situation, officers placed C.B. in handcuffs for his own safety and that of others, and Lt. Pierce and EMT Mejia made the entirely reasonable decision to transport C.B. to the hospital for evaluation. The conduct of the officer defendants and the defendant EMTS was explicitly authorized by the Mental Hygiene Law, and for that reason, C.B.'s claim against them for false arrest fails.

Munoz's claims fair no better. She obstructed government administration when she pushed past police, blocked the door to the ambulance with her body, and placed her left arm through her son's hand-cuffed right arm, resulting in him being pulled off the ambulance.

For all these reasons and those set forth above, plaintiffs' Second Amended Complaint should be dismissed.

Dated:      New York, New York
            October 15, 2020


                                James E. Johnson
                                Corporation Counsel of the
                                City of New York
                                *Attorney for Defendants*
                                100 Church Street
                                New York, New York 10007
                                (212) 356-2335


                        By:      *Elissa Fudim*
                                Elissa P. Fudim
                                *Senior Counsel*
                                Special Federal Litigation Division

21