UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED. 3/31/19

JOSEPH HAYDEN,

               Plaintiff,

-v-

CITY OF NEW YORK, AHMED ABDALLA, and ADAM KOTOWSKI,

               Defendants.

No. 17-cv-1894 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Joseph Hayden brings this action pursuant to 42 U.S.C. § 1983 against the City of New York and two of its police officers, Officer Ahmed Abdalla and Officer Adam Kotowski (together, the "Officer Defendants"), asserting claims for violations of his Fourth, Fifth, and Fourteenth Amendment rights and for tort claims under state law. Now before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

Plaintiff Joseph Hayden is a civil rights advocate and community activist. (Doc. No. 1 ("Compl.") ¶ 16.) On March 15, 2016, he "attended a public meeting on criminal justice issues,"

---

[1] The following facts are taken from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 42 ("Def. 56.1")), Plaintiff's Local Civil Rule 56.1 Counterstatement (Doc. No. 48 ("Pl. 56.1")), Defendants' response to that counterstatement (Doc. No. 52 ("Reply 56.1")), the declarations submitted in support of and in opposition to Defendants' motion (Doc. Nos. 41, 46, 53) and the documents and other exhibits attached thereto, including two videos of the incident at the heart of this litigation (Doc. Nos. 41-5, 41-6). *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Unless otherwise noted, where one party's Local Civil Rule 56.1 Statement or Counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding Defendants' motion, the Court has also considered Defendants' memorandum of law in support of their motion (Doc. No. 43 ("Def. Mem.")), Plaintiff's opposition (Doc. No. 47 ("Pl. Mem.")), Defendants' reply (Doc. No. 51 ("Reply")), and Plaintiff's additional reply (Doc. No. 56 ("Sur-Reply")).

which was held "in a building on 57[th] St[reet] just east of Broadway in Manhattan." (*Id.* ¶ 22.) After the event ended, Plaintiff exited the building onto 57th Street, where he saw a group of police officers and emergency medical personnel "attempting to persuade a male emotionally disturbed person ('EDP') to accompany them into a waiting ambulance." (Def. 56.1 ¶ 3.) Plaintiff, who was part of a group of onlookers (Def. 56.1 ¶ 7), began to record the interaction on his cell phone (*id.* ¶ 4; *see also* Doc. No. 41-5 (the video recorded by Plaintiff)) and, despite the presence of police and medical personnel, began to speak directly to the EDP, encouraging him to "suave," or "relax" (Pl. 56.1 ¶ 37).

Approximately two minutes after Plaintiff began recording, Officer Ahmed Abdalla and Officer Adam Kotowski arrived at the scene. (Def. 56.1 ¶ 5.) Officer Abdalla instructed Plaintiff to move away from the EDP. (Pl. 56.1 ¶ 42.) Although Plaintiff initially complied (*id.*), about two minutes later, he walked back toward the scene of the incident – the location where the EDP, who had been moved to a waiting ambulance, had been seated (Doc. No. 41-5 at 4:30–50). Abdalla repeatedly instructed Plaintiff and others around him to move away from the scene of the incident, while Plaintiff argued that he was not obstructing the sidewalk and that there was no need for him to move. (*Id.* at 4:50–5:23.) Abdalla subsequently demanded Plaintiff's identification, which Plaintiff refused to provide. (*Id.* at 5:23–5:40.) Officer Abdalla then told Plaintiff that he was under arrest. (*Id.* at 5:40–6:00.)

The parties disagree about what happened next. Plaintiff asserts that he lost his balance while Officer Abdalla was attempting to handcuff him and, "[t]o regain it[,] he placed his hand on Officer Abdalla's collar." (*See* Pl. 56.1 ¶ 56.) Defendants, on the other hand, contend that "Plaintiff grabbed Officer Abdalla's jacket and shoved him in his chest area." (Reply 56.1 ¶ 20.) Officers Abdalla and Kotowski then successfully handcuffed Plaintiff, who by then was on the

2

ground. (*See* Def. 56.1 ¶ 26; Pl. 56.1 ¶¶ 58–61.) Plaintiff alleges that while he was on the ground, Officer Abdalla, "utilizing his asp/baton, struck the Plaintiff in his midsection and struck him at least two times in the back of his legs." (Pl. 56.1 ¶ 60.) Defendants contest this claim. (*See* Def. Reply 56.1 ¶ 60.) Plaintiff was then placed in a police car, searched, and taken to a police station. (Pl. 56.1 ¶ 61.) The next day, Officer Kotowski swore out a misdemeanor complaint against Plaintiff (Doc. No. 41-8), and Plaintiff was released (Pl. 56.1 ¶ 70). The charges were ultimately dismissed. (Def. 56.1 ¶ 30.)

Plaintiff commenced this action by filling the operative complaint on March 15, 2017. (Doc. No. 1.) The Complaint sets out twelve theories of liability in five causes of action, four of which remain.[2] Plaintiff alleges that Officers Abdalla and Kotowski violated his Fourth, Fifth, and Fourteenth Amendment rights by (1) falsely arresting him (Compl. ¶ 52); (2) performing an unreasonable search (*id.*); (3) using "excessive and unnecessary force" (*id.* ¶ 54); and (4) depriving him of his right to a fair trial (*id.* ¶ 56). Plaintiff also sets out state-law claims for false arrest, false imprisonment, assault, battery, negligence, and intentional and negligent infliction of emotional distress. (*Id.* ¶ 60.) Defendants moved for summary judgment on July 10, 2018. (Doc. No. 40.) The motion was fully briefed on September 10, 2018. (Doc. No. 56.)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine

---

[2] Count IV alleged that the City violated Plaintiff's constitutional rights by failing to properly train and supervise its police officers "with respect to the right of private persons to video police activity." (Compl. ¶ 58.) That claim was voluntarily dismissed by Plaintiff on July 9, 2018. (Doc. No. 39.) Thus, the City remains a defendant only to the extent the state common law causes of action create potential vicarious liability for actions of the City's employees – here, the police officers. *See Williams v. City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010) (dismissing Section 1983 action, but not assault and battery claims against City of White Plains due to potential for vicarious liability under state law).

3

dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "show[s] – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).

## III. DISCUSSION

### A. Federal Claims

Section 1983 creates a civil cause of action that permits a plaintiff to recover damages from any person who, acting under color of state law, deprives the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983 does not create underlying substantive rights; it simply provides a cause of action through which a plaintiff may vindicate a right created elsewhere. *Quon v. City of New York*, No. 14-cv-9909 (RJS), 2016 WL 4411416, at *3 (S.D.N.Y. Aug. 18, 2016). To prove a Section 1983 claim, "a plaintiff must demonstrate (1) the deprivation of any right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under color of state law." *Id.* To hold a defendant liable, the plaintiff must prove that he or she was "personally involved in the unconstitutional conduct." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

### 1. False Arrest

"A Section 1983 claim for false arrest, based on the Fourth Amendment right to be free from unreasonable seizures, 'is substantially the same as a claim for false arrest under New York law.'" *Quon*, 2016 WL 4411416, at *3 (quoting *Weyant*, 101 F.3d at 852). To prevail on this claim, Plaintiff must ultimately prove that "(1) the defendant[s] intended to confine [him], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). The parties agree that the first three elements of this test have been met.

This claim therefore turns on whether or not the arrest of Plaintiff was privileged. *Id.* Specifically, the parties dispute whether probable cause existed to arrest Plaintiff on any charge – if it did, the arrest was privileged, and the Officer Defendants cannot be liable. *See Weyant*, 101 F.3d at 852 (noting that the existence of probable cause "is a complete defense to an action for

5

false arrest" (internal quotation marks and citation omitted)).  Whether or not there was probable cause to arrest must be evaluated in light of the facts of each case, *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010), but generally, "probable cause to arrest exists when the officers have knowledge . . . of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime," *Weyant*, 101 F.3d at 852.  "Thus, under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).

In addition, even if the undisputed facts, viewed in the light most favorable to Plaintiff, do not support a finding of probable cause, the Officer Defendants may still be entitled to summary judgment on qualified immunity grounds if they "can establish that there was 'arguable probable cause' to arrest" Plaintiff. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) ("Qualified immunity is a complete defense to false arrest claims.")  "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Escalera*, 361 F.3d at 743 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)); *see also Costello v. Milano*, 20 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) ("[Q]ualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).  The "arguable probable cause" inquiry turns on the information in the officer's possession at the time of the arrest, but does not consider the officer's "subjective intent, motives, or beliefs." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).  "Summary

6

judgment on qualified immunity grounds is warranted where 'the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the plaintiff, could conclude that the defendant[s'] actions were objectively unreasonable in light of clearly established law." *Daniels v. City of New York*, No. 15-cv-2251 (RJS), 2016 WL 4368378, at *4 (S.D.N.Y. Aug. 14, 2016) (quoting *Costello*, 20 F. Supp. 3d at 416). Defendants bear the burden of proving that such arguable probable cause existed. *Id*.

When he was detained on March 15, 2016, Plaintiff was charged with resisting arrest in violation of N.Y. Penal Law § 205.30; obstructing governmental administration in the second degree ("OGA") in violation of N.Y. Penal Law § 195.05; disorderly conduct – obstructing traffic ("obstructing traffic") in violation of N.Y. Penal Law § 240.20(5); disorderly conduct – refusing to disperse ("refusing to disperse") in violation of N.Y. Penal Law § 240.20(6); and harassment in the second degree in violation of N.Y. Penal Law § 240.26(3). (Def. 56.1 ¶ 27; *see also* Doc. No. 41-7 (arrest report).) Defendants now contend that probable cause, or at least arguable probable cause, existed to arrest Plaintiff for four of the offenses charged – resisting arrest, OGA, obstructing traffic, and refusing to disperse. (Def. Mem. at 7; Reply at 5.) If probable cause or arguable probable cause existed in connection with any of these offenses, Plaintiff's false arrest claim must be dismissed. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

"A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." N.Y. Penal Law § 195.05. "This offense has four elements: '(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or

7

interference.'" *Basinski v. City of New York*, 706 F. App'x 693, 697 (2d Cir. 2017) (quoting *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010)). Interference occurs "when an individual 'intrude[s] himself into, or get[s] in the way of, an ongoing police activity." *Kass v. City of New York*, 864 F.3d 200, 210 (2d Cir. 2017) (quoting *In re Kendell R.*, 71 A.D.3d 553, 897 N.Y.S.2d 83, 84 (1st Dep't 2010)); *see also People v. Beam*, 866 N.Y.S.2d 564, 567 (N.Y. Sup. Ct. 2008) (finding that a passerby may not intentionally insert himself into "steps taken by police officers to fulfill their duties"). "[A] finding of [physical] interference 'may [] be predicated on a defendant's refusal to obey orders to leave a premises, . . . to step back from an accident scene[,] or to keep away from an area where a disturbance is taking place.'" *Fana v. City of New York*, No. 15-cv-8114 (PGG), 2018 WL 1581680, at *8 (S.D.N.Y. Mar. 27, 2018); *see also Berger v. Schmitt*, 91 F. App'x 189, 191 (2d Cir. 2004) (finding probable cause to arrest for OGA where plaintiff had "defied" an order to leave the scene of an altercation by returning to the scene and approaching those who had been involved in the altercation).

On the record before it, and viewing the facts in the light most favorable to Plaintiff, the Court concludes that the officers had probable cause – and at least arguable probable cause – to arrest Plaintiff for obstructing governmental administration. The undisputed video evidence reflects that Officers Abdalla and Kotowski arrived on the scene as other officers were securing the EDP in the ambulance, and they began instructing Plaintiff and others to "move back." (Doc. No. 41-5 at 3:20.) Officer Abdalla said, "Ok, you can film, but I'm telling you to move back." (Def. 56.1 ¶ 10.) In response, Plaintiff temporarily moved back, but continued to engage officers and loudly criticize their efforts. (Doc. No. 41-5 at 3:53.) Plaintiff then re-entered the scene of the incident, walking over to Officer Abdalla, who at that time appeared to be dealing with the EDP's belongings and with other individuals. (*Id.* at 4:25–4:35.) Plaintiff re-engaged Officer

Case 1:17-cv-01894-RJS Document 57 Filed 03/31/19 Page 9 of 18

Abdalla by yelling criticisms (*id.* at 4:40–4:50), and Officer Abdalla responded with additional orders to move back (*id.* at 4:50). Plaintiff argued that he was not in fact in the officers' way and refused to obey these orders. (*Id.* at 4:30–5:23.) He continued to yell at the officers who were addressing what had previously been an unstable situation. Accordingly, "[u]nder these circumstances, prudent officers could believe that [Plaintiff] was attempting to interfere with the officers' efforts to contain what had only recently been a volatile situation, and thereby was obstructing governmental administration." *Berger*, 91 F. App'x at 191. Thus, the Officer Defendants had probable cause to arrest Plaintiff. Additionally, even if the Officer Defendants lacked probable cause to arrest Plaintiff, it is clear from the record that arguable probable cause existed to arrest him for OGA. *See Kass*, 864 F.3d at 210.

The Officer Defendants also had probable cause to arrest Plaintiff for failing to disperse. A person is guilty of refusal to disperse "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] . . . [a person] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse[,]" N.Y. Penal Law § 240.20(6), "unless the order was 'purely arbitrary' and 'not calculated in any way to promote the public order,'" *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 206 (2d Cir. 2010) (quoting *People v. Galpern*, 259 N.Y. 279, 284-85 (1932)). Here, Plaintiff and a "crowd" (*see* Pl. 56.1 ¶ 7) were congregating to videotape the police officers and EDP when Plaintiff was told to "move back," a directive that Officer Abdalla at one point characterized as a "lawful order" (Doc. No. 41-5 at 4:55). Plaintiff did not comply. Officer Abdalla at the time stated that Plaintiff and others were obstructing the sidewalk, and thus the instruction was calculated to promote public order. Therefore, a reasonable officer could conclude under the circumstances that the directions to "move back" constituted an order to disperse and that Plaintiff refused to comply.

Accordingly, probable cause – and at least arguable probable cause – existed to arrest Plaintiff for refusing to disperse.

Because the Officer Defendants had probable cause, and at the very least arguable probable cause, to arrest Plaintiff for OGA and failure to disperse, Plaintiff's claim for false arrest must be dismissed. *See Kass*, 864 F.3d at 206 ("An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff as actually charged."). The Court therefore need not consider whether probable cause existed to arrest Plaintiff for obstructing traffic or resisting arrest. *See Jaegly*, 439 F.3d at 154; *see also Marcavage v. City of New York*, No. 05-cv-4949 (RJS), 2010 WL 3910355, at *10 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 689 F.3d 98 (2d Cir. 2012).

### 2. Unreasonable Search

Defendants are similarly entitled to summary judgment on Plaintiff's unreasonable search claim. As set forth above, the Officer Defendants had at least arguable probable cause to arrest Plaintiff. The search at issue here occurred immediately following Plaintiff's arrest, upon his arrival at the police precinct. (Pl. 56.1 ¶ 61; Doc. No. 46-3 at 14:8–22, 15:9–13, 16:8–20.) Thus, because the Officer Defendants had arguable probable cause to arrest Plaintiff, and because Plaintiff has offered no evidence to suggest that "the search strayed outside the bounds of what is acceptable incident to a lawful arrest, Plaintiff's unlawful search claim must fall with [his] false arrest claim." *Anderson v. City of New York*, No. 15-cv-6246 (AJN), 2017 WL 4712790, at *6 (S.D.N.Y. Sept. 25, 2017). Accordingly, Plaintiff's unreasonable search claim must be dismissed.

### 3. Denial of the Right to a Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair

trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Riccuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To make out a Section 1983 claim for the denial of a right to a fair trial, a plaintiff must prove that (1) "the officer created false information," (2) "the officer forwarded the false information to the prosecutors," and (3) "the false information was likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016). False information may include "the officer's own account of his or her observations of alleged criminal activity which he or she conveys to prosecutors." *Id.* at 268.

Plaintiff contends that, because of the discrepancies between his version of events and Officer Kotowski's, "a rational juror could find that Officer [Kotowski] lied in his affidavit thereby violating [Plaintiff's] fair trial rights."[3] (Pl. Mem. at 22; *see also* Doc. No. 41-8 (Kotowski's affidavit).) Plaintiff is mistaken. The factual differences between Plaintiff's version of events and Officer Kotowski's version are not enough to create a genuine dispute of material fact as to whether Officer Kotowski was purposefully untruthful. *See Heard v. City of New York*, 319 F. Supp. 3d 687, 697 (S.D.N.Y. 2018) ("The difference to which [the plaintiff] points between the various accounts of his arrest are not sufficient to create a genuine dispute as to whether [the defendant] intentionally falsified information or fabricated evidence."). Plaintiff asserts that Officer Kotowski lied when he swore that "the sidewalk was crowded with people" and that "pedestrian traffic was obstructed" (Pl. Mem. at 22), but video evidence confirms that a crowd of people and police officers were gathered on the sidewalk and obstructing traffic (Doc. No. 41-5). Plaintiff likewise argues that Officer Kotowski lied when he swore that Plaintiff "refused to leave the scene after being ordered to do so" (Pl. Mem. at 22), but the Court has already found that the video supports

---

[3] Plaintiff also brought this claim against Officer Abdalla, but now concedes that it must be dismissed as against him. (Pl. Mem. at 21 n.5.)

11

Officer Kotowski's allegation that Plaintiff refused to disperse. Finally, Plaintiff asserts that Officer Kotowski lied when he swore that Plaintiff "pushed" Officer Abdalla and "flailed his arms" during arrest. (Pl. Mem. at 22.) But since Plaintiff admits that he "placed one hand on Officer Abdalla" and moved his arms to grab a pole during arrest (Pl. Mem. at 23), he does not really dispute the accuracy of Officer Kotowski's description – he merely offers a justification (or affirmative defense) that relates to Plaintiff's own state of mind, not his actual conduct. Thus, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the statements were actually false. Accordingly, Officer Kotowski is entitled to summary judgment on Plaintiff's denial of the right to a fair trial claim.

### 4. Excessive Force

Plaintiff alleges that the Officer Defendants used excessive force during the arrest and particularly when Officer Abdalla struck Plaintiff in his midsection and legs with his baton. (Pl. Mem. at 17.) "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (internal quotation marks omitted). Whether the amount of force a particular officer used was is reasonable is a fact-specific inquiry. *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 721 (S.D.N.Y. 2017). The parties now agree that a genuine dispute of material fact exists as to whether the Defendants used excessive force on Plaintiff. (Reply at 1 n.1 ("[W]ith respect to [P]laintiff's excessive force and assault and battery claims [] . . . [D]efendants . . . no longer pursue summary judgment as to these claims.").) Accordingly, this claim will proceed to trial.

### B. Pendant State Law Claims

Plaintiff's complaint also raises pendant state law claims for false arrest, false imprisonment, assault, battery, negligence, and intentional and negligent infliction of emotional

12

distress. (Compl. ¶ 60.) Plaintiff now concedes that his emotional distress claims must be dismissed. (Pl. Mem. at 23.) Defendants, for their part, admit that Plaintiff's assault and battery claims survive alongside his excessive force claim. (Reply at 1 n.1.) *See also Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) ("[W]ith the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical."). The Court will therefore address the viability of Plaintiff's false arrest, false imprisonment, and negligence theories.

False arrest and false imprisonment "are two names for the same tort." *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d 583, 589 (2d Dep't 2011). Under New York law, where, as here, "an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful." *Jenkins*, 478 F.3d at 88. "However, this presumption is rebutted if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had reasonable cause for believing the person to be arrested have committed [an offense]." *Id.* (internal quotation marks and citation omitted). Thus, "[s]imilar to the federal doctrine" of qualified immunity, "if, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was *objectively* reasonable, the court under New York law should dismiss the plaintiff's false arrest claim at the summary judgment stage." *Id.* As discussed above, the Officer Defendants acted reasonably in determining that probable cause existed to arrest Plaintiff for OGA and failure to disperse. Accordingly, Plaintiff's state law false arrest and false imprisonment claims must be dismissed. *See Alhovsky v. Paul*, 406 F. App'x 535, 537 (2d Cir. 2011) ("Because, as noted above, the arresting officers had at least arguable probable cause to arrest [the plaintiff], the officers have state law immunity [against the plaintiff's] state law claims of false arrest and false imprisonment."); *see also Gillard*, 2013 WL 521529, at *9–10.

13

Plaintiff's negligence claim, which is based on "Officer Abdalla's actions" in the "negligent use of his baton and/or the negligent way in which he tightened [P]laintiff's handcuffs," must also be dismissed. (Pl. Mem. 25.) "[U]nder New York State law, when a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Bogart v. City of New York*, No. 13-cv-1017 (NRB), 2016 WL 4939075, at *13 (S.D.N.Y. Sept. 6, 2016) (quoting *Tatum v. City of New York*, No. 06-cv-4290 (BSJ) (GWG), 2009 WL 124881, at *10 (S.D.N.Y. Jan. 20, 2009)). Here, Plaintiff's claims are clearly based on intentional conduct. (*See* Pl. 56.1 ¶ 60; Pl. Mem. at 17.) Accordingly, his negligence claims are impermissibly based on the same conduct underlying his excessive force and intentional tort claims, and so must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's federal claims for false arrest, unreasonable search, and denial of the right to a fair trial, and Plaintiff's state law claims for false arrest, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Defendants' motion is DENIED as to Plaintiff's excessive force, assault, and battery claims.

IT IS HEREBY ORDERED THAT trial shall commence on July 29, 2019 at 9:30 a.m. in Courtroom 15A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York.

IT IS FURTHER ORDERED THAT, by June 28, 2019, the parties shall jointly submit a Proposed Pretrial Order that includes, in separately numbered paragraphs, the information required by Federal Rule of Civil Procedure 26(a)(3), as well as the following information:

i. The full caption of the action;

14

ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel;

iii. A brief statement by Plaintiffs as to the basis of subject-matter jurisdiction and a brief statement by Defendant as to the presence or absence of subject-matter jurisdiction, each of which shall include citations to all authority relied on and relevant facts as to citizenship and jurisdictional amount;

iv. A brief summary by each party of the claims and defenses that the party has asserted that remain to be tried – without recital of evidentiary matters but with citations to all statutes on which the party has relied – and of the claims and defenses that the party has previously asserted that are not to be tried;

v. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed;

vi. A statement as to whether all parties have consented to a trial of the case by a magistrate judge (without identifying which party or parties have or have not so consented);

vii. Any stipulations of fact or law that have been agreed upon by the parties;

viii. A statement by each party as to the witnesses whose testimony is to be offered in the party's case-in-chief, indicating whether such witnesses will testify in person or by deposition;

ix. A designation by each party of deposition testimony to be offered in the party's case-in-chief, with any cross-designations and objections by any other party;

15

x.   A list by each party of exhibits to be offered in the party's case-in-chief, with an indication as to whether any party objects to any such exhibits and a brief statement of the nature of the objection (*e.g.*, "relevance," "authenticity," "hearsay"); and

xi.  A statement of whether the parties consent to less than a unanimous verdict.

IT IS FURTHER ORDERED THAT, in jury cases, the parties shall file with the Proposed Pretrial Order the following submissions:

i.   Jointly proposed *voir dire* questions – a copy of which shall be emailed to chambers[4] in a Word version – which shall include the text of any requested question and should consist of a single document and note any areas of disagreement between the parties;

ii.  A jointly proposed verdict form – a copy of which shall be emailed to chambers in a Word version – which should consist of a single document and note any areas of disagreement between the parties;

iii. Jointly proposed jury instructions – a copy of which shall be emailed to chambers in a Word version – which shall include the text of any requested instruction and a citation, if relevant, to the authority from which such instruction derives, and which should consist of a single document and note any areas of disagreement between the parties;

iv.  Motions addressing any evidentiary or other issues that should be resolved *in limine*; and

v.   If a party believes that it would be useful, a pretrial memorandum, not to exceed 10 pages.

---

[4] Chambers may be contacted by email at: ca02_rjschambers@ca02.uscourts.gov

IT IS FURTHER ORDERED THAT, in non-jury cases, the parties shall jointly file with the Proposed Pretrial Order the following submissions:

i.      Jointly proposed findings of fact and conclusions of law – a copy of which shall be emailed to chambers in a Word version – which should be detailed and note any areas of disagreement between the parties and, for each proposed factual finding, shall include citations to the record;

ii.     Motions addressing any evidentiary or other issues that should be resolved *in limine*; and

iii.    If a party believes that it would be useful, a pretrial memorandum, not to exceed 10 pages.

IT IS FURTHER ORDERED THAT, in non-jury cases, at the time that the Proposed Pretrial Order is filed, each party shall serve (but not file) the following submissions and shall submit two courtesy copies of these submissions as well as digital copies on CD or DVD discs to chambers:

i.      Affidavits – the originals of which shall be marked as exhibits at trial – constituting the direct testimony of each trial witness, except for testimony of an adverse party, a person whose attendance must be compelled by subpoena, or a person for whom a party has requested and from whom the Court has agreed to hear direct testimony during the trial;

ii.     All deposition excerpts that will be offered as substantive evidence and, for each, a one-page synopsis of those excerpts (with citations); and

iii.    All documentary evidence, which shall be compiled in tabbed binders containing all documentary exhibits organized by exhibit number. If the number of exhibits is

17

so voluminous as to make compliance with this rule impractical, the parties shall contact the Court for guidance.

IT IS FURTHER ORDERED THAT, in non-jury cases, within three business days after the parties submit the above-mentioned affidavits, each party shall submit a list of all affiants whom the party's counsel intends to cross-examine at trial. IT IS FURTHER ORDERED THAT only those witnesses who will be cross-examined need appear at trial.

IT IS FURTHER ORDERED THAT, within one week of the filing of the Proposed Pretrial Order, any party may file the following documents:

i.      Oppositions to any motions *in limine*; and

ii.     Oppositions to any legal arguments set forth in a pretrial memorandum.

Finally, IT IS FURTHER ORDERED THAT the parties shall appear for a final pretrial conference on Thursday, July 25, 2019 at 10:00 a.m. in Courtroom 15A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York to discuss the trial, which, as ordered above, will commence on the morning of July 29, 2019.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 40.

SO ORDERED.

Dated:       March 31, 2019
             New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

18